**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-61941-BLOOM/Valle**

RICHEMONT INTERNATIONAL SA,
CARTIER INTERNATIONAL A.G.,
CHLOE S.A.S., MONTBLANC-SIMPLO
GMBH, and OFFICINE PANERAI A.G.,

        Plaintiffs,

vs.

MONTBLANCHOT.COM, *et al.*,

        Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Preliminary Injunction, ECF No. [5] ("Motion"). The Court has reviewed the Motion, the record in this case, and the applicable law, and is otherwise fully advised.

By the instant Motion, Plaintiffs, Richemont International SA, Cartier International A.G., Chloe S.A.S., Montblanc-Simplo GMBH, and Officine Panerai A.G. (collectively "Plaintiffs") move for entry of a preliminary injunction against Defendants,[1] for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, and 1125(a) and (d). The Court held a hearing on October 2, 2020, which was attended by counsel for Plaintiffs only. During the hearing, Plaintiffs directed the Court to evidence supporting the Motion for Preliminary Injunction. None of the Defendants formally responded to the Motion, nor have they made any appearance or filing in this case, either

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants").

individually or through counsel. Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, the Court grants the Motion.

## I.    FACTUAL BACKGROUND[2]

Plaintiff Richemont International SA is the owner of the entire right, title and interest in and to the IWC Schaffhausen trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "IWC Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| IWC | 1,205,403 | August 17, 1982 | IC 014 - Watches |
| PORTOFINO | 1,846,680 | July 26, 1994 | IC 014 - Watches and parts therefore |
| IWC SCHAFFHAUSEN | 4,270,382 | January 8, 2013 | IC 014 - Watches, chronometers, clocks; straps for wristwatches, boxes of precious metal for watches and all the aforementioned goods from Switzerland |
| IWC | 4,322,600 | April 23, 2013 | IC 014 - Watches, chronometers, clocks, watch bands, boxes of precious metal for watches |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 7; ECF No. [1-2] (containing Certificates of Registrations for the IWC Marks at issue). The IWC Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 6-7.

---

[2] The factual background is taken from Plaintiffs' Complaint, ECF No. [1], Plaintiffs' Motion for Preliminary Injunction, ECF No. [5], and supporting evidentiary submissions. Plaintiffs filed declarations and exhibits annexed thereto in support of their Motion for Preliminary Injunction. The declarations are available on the docket at the following entries: Declaration of Emma-Jane Tritton, ECF No. [5-1], and Declaration of Stephen M. Gaffigan, ECF No. [5-2].

Case No. 20-cv-61941-BLOOM/Valle

Plaintiff Richemont International SA is the owner of the entire right, title and interest in and to the Vacheron Constantin trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "VACHERON CONSTANTIN Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
|  **VACHERON CONSTANTIN** | 3,114,414 | July 11, 2006 | IC 014 - Cuff links; watches, chronometers, clocks, watchstraps, cases of precious metal for watches and jewellery |
|  | 4,564,316 | July 8, 2014 | IC 014 - Watches and chronometers |
| VACHERON CONSTANTIN | 5,630,166 | December 18, 2018 | IC 014 - Jewelry; Cuff links; Tie clips; Jewelry in the nature of rings, bracelets, earrings, necklaces and brooches; Timepieces in the nature of clocks; Dials for clock and watch making; Key rings of precious metal; Timepieces and chronometric instruments; Watches; Chronometers; Cases adapted for holding watches; Movements for timepieces in the nature of clocks and watches; Alarm clocks; Watch bands; Boxes of precious metal |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 13; ECF No. [1-3] (containing Certificates of Registrations for the VACHERON CONSTANTIN Marks at issue). The VACHERON CONSTANTIN Marks are used in connection with the manufacture and distribution

of high-quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 12-13.

Plaintiff Cartier International A.G. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "CARTIER Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CARTIER | 0,411,239 | January 9, 1945 | IC 008, 014 - Precious-Metal Ware-Namely, The Following Articles Made, In Whole Or In Part, Of Precious Metals Or Plated With The Same; Jewel Boxes, Fobs, Bracelets, Watch Bracelets And Buckles Therefore, Not Including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings. |
| *Cartier* | 0,411,240 | January 9, 1945 | IC 014 - Articles of Jewelry for Personal Wear and for Precious-Metal Ware-Namely, the Following Articles Made, in Whole or in Part, of Precious Metals or Plated with the Same-- viz, Jewel Boxes, Fobs, Bracelets, Watch Bracelets and Buckles Therefor, Not Including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings |

| | | | |
|---|---|---|---|
| *Cartier* | 0,411,975 | February 13, 1945 | IC 014 - Watches and Clocks and Wrist Watches with Wrist Straps and Bracelets Attached for Securing the Same on the Wrist of the Wearer, and Traveling Clocks and Watches with Covers of Leather, Fabric and the Like for Protecting Them While Traveling |
| CARTIER | 0,759,201 | October 29, 1963 | IC 014 - Watches and Clocks |
| LOVE BRACELET | 1,005,286 | February 25, 1975 | IC 014 - Jewelry-Namely, Bracelets |
| | 1,372,423 | November 26, 1985 | IC 014 – Bracelets |
| | 3,162,410 | October 24, 2006 | IC 014 - Jewelry, Namely, Bracelets, Watches, Rings, Charms, Earrings |
| | 3,282,847 | August 21, 2007 | IC 014 - Horologic and chronometric instruments, namely, watches |
| BALLON BLEU | 3,476,888 | July 29, 2008 | IC 014 - Watches, Chronometers, Clocks |
| | 3,776,794 | April 20, 2010 | IC 014 - Jewelry, Namely, Rings, Bracelets, Charms, Earrings, Made Of Precious Metals |
| *Cartier* | 4,178,047 | July 24, 2012 | IC 014 - Jewelry and watches |

| | | | |
|---|---|---|---|
|  | 4,281,248 | January 29, 2013 | IC 014 - Jewelry; Necklaces. |
| JUSTE UN CLOU | 4,290,694 | February 19, 2013 | IC 014 - Jewelry; cuff links; tie clips; rings; earrings; necklaces; brooches. |
|  | 4,483,522 | February 18, 2014 | IC 014 – Watches |
|  | 4,487,142 | November 27, 2012 | IC 014 – Watches |
|  | 4,608,158 | September 23, 2014 | IC 014 – Watches |
|  | 5,583,979 | October 16, 2018 | IC 014 – Jewelry |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 19; ECF No. [1-4] (containing Certificates of Registrations for the CARTIER Marks at issue). The CARTIER Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 18-19.

Plaintiff Chloe S.A.S. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "CHLOE Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| Chloé | 0,950,843 | January 16, 1973 | IC 010, 025, 026 - Ladies' articles of clothing for outerwear-namely, frocks, dresses, coats, costumes, suits, skirts, blouses, vests and pant-suits; vests, and ladies' shoes |
| CHLOE | 1,491,810 | June 14, 1988 | IC 018 - Handbags, Purses |
| SEE BY CHLOE | 2,641,982 | October 29, 2002 | IC 018 - travelling bags, holdalls, tote bags, handbags, credit card case; purses, wallets, key cases, coin purses, parts and fittings for all the aforesaid goods<br><br>IC 025 - clothing, namely, trousers, skirts, suits, dresses, jackets, blousons, shirts, coats, cardigans, sweaters, blouses, shorts, t-shirts, pullovers, scarves |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 25; ECF No. [1-5] (containing the Certificates of Registration for the CHLOE Marks at issue). The CHLOE Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 24-25.

Plaintiff Montblanc-Simplo GMBH is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "MONTBLANC Marks"):

Case No. 20-cv-61941-BLOOM/Valle

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| MONTBLANC | 0,776,208 | September 1, 1964 | IC 016 - Fountain Pens, Cases for Fountain Pens, Ball Point Pens, Ball Point Cartridges, Ball Point Paste, Mechanical Pencils, Lead for Mechanical Pencils |
|  | 0,839,016 | November 21, 1967 | IC 002 - Fountain pen ink<br><br>IC 016 - Fountain pens, cases for fountain pens, ball point pens, ball point cartridges, mechanical pencils, lead for mechanical pencils, desk stands for pens |
| MEISTERSTUCK | 1,324,392 | March 12, 1985 | IC 016 - Fountain Pens, Ballpoint Pens and Mechanical Pencils Including Sets Thereof, All Made Partially with Precious Metals and Sold in Specialty Stores |
| MONTBLANC | 1,884,842 | March 21, 1995 | IC 014 - Jewelry, watches and timepieces<br><br>IC 018 - Purses, handbags, small leather articles and accessories, namely wallets and billfolds, and luggage |
| STARWALKER | 2,759,073 | September 2, 2003 | IC 016 - Fountain pens, ball-point pens, pencils, felt-tip pens, rollerballs |
| TIMEWALKER | 2,775,693 | October 21, 2003 | IC 014 - Wrist watches. |
|  | 2,975,592 | July 26, 2005 | IC 016 - Writing instruments |
|  | 3,659,753 | July 28, 2009 | IC 016 - Writing instruments, namely, pens |

| | | | |
|---|---|---|---|
|  | 4,460,482 | January 07, 2014 | IC 016 - Writing instruments, in particular fountain pens, rollerballs, ballpoint pens, markers, pencils |
|  | 4,669,133 | January 13, 2015 | IC 014 - Jewelry; precious stones; precious metals and their alloys; cufflinks; tie clips; rings; bracelets; earrings; necklaces; brooches; key rings of precious metal; jewelry cases; boxes of precious metals; horological and chronometric instruments; watches; chronometers; clocks; small clocks; watch cases; watch bands; watch bracelets; key rings, trinkets, or fobs of precious metal<br><br>IC 016 - Stationery; articles of paper or cardboard, namely, boxes, bags, envelopes and pouches for packaging; wrapping paper; writing instruments; pouches for writing instruments; cases for writing instruments; inks and ink refills for writing instruments; desk sets; writing books; calendars, note books, card and document files, announcement cards; writing paper, envelopes, index cards; business cards; writing pads; writing instrument holders; paperweights; diaries, cover for diaries, replacement papers for diaries; inkwells; check book holders, passport holders; document holders and cases; photo albums; bookends; money clips; writing cases for writing instruments |

Case No. 20-cv-61941-BLOOM/Valle

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 31; ECF No. [1-6] (containing Certificates of Registrations for the MONTBLANC Marks at issue). The MONTBLANC Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 30-31.

Plaintiff Officine Panerai A.G. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "PANERAI Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| PANERAI | 2,340,290 | April 11, 2000 | IC 014 - Chronometers, watches |
| RADIOMIR | 2,418,830 | January 9, 2001 | IC 014 - Chronometers; watches and clocks. |
| LUMINOR | 2,516,018 | December 11, 2001 | IC 014 - Chronometers, watches and clocks |
|  | 3,004,529 | October 4, 2005 | IC 014 - Boxes and cases for watches; chronometers, watches |
| OFFICINE PANERAI | 4,009,035 | August 9, 2011 | IC 014 - Watches and clocks; watch accessories, namely, watch straps, and buckles for watch bands and watch straps. |
|  | 4,971,867 | June 7, 2016 | IC 014 - Watches |
| LUMINOR MARINA | 5,763,549 | May 28, 2019 | IC 014 - Chronometers, watches |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 37; ECF No. [1-7] (containing Certificates of Registrations for the PANERAI Marks at issue). The PANERAI Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 36-37.

Defendants, through the various fully interactive, commercial Internet websites and supporting domains operating under their domain names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions, or colorable imitations of the IWC Marks, VACHERON CONSTANTIN Marks, CARTIER Marks, CHLOE Marks, MONTBLANC Marks, and/or PANERAI Marks (collectively, "Plaintiffs' Marks"). *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 42-44; *see also* Declaration of Stephen M. Gaffigan, ECF No. [5-2] at 2.

Although each Defendant may not copy and infringe each of the Plaintiffs' individual trademarks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the trademarks at issue. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 42-44. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Plaintiffs' Marks. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 42-43.

Further, the Plaintiffs have reason to believe the Defendants use money transfer and retention services with financial institutions such as PayPal, Inc. ("PayPal"), and/or accept payment methods including, but not limited to, Western Union, Mastercard, and Visa, to receive monies generated through the sale of counterfeit and infringing products, as the Plaintiffs'

counsel's firm found these payment methods indicated on the websites when accessing the Subject Domain Names. *See* Declaration of Stephen M. Gaffigan, ECF No. [5-2] at 2.

Under Plaintiffs' representative's direct supervision, Incopro Limited's reviewing representatives reviewed and visually inspected each Defendants' websites, as well as the images of various items bearing and/or using the Plaintiffs' Marks offered for sale by Defendants through the Internet websites operating under the Subject Domain Names, and determined the products offered for sale were non-genuine, unauthorized versions of Plaintiffs' respective products. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 4, 43-44.

On September 23, 2020, Plaintiffs filed their Complaint, ECF No. [1], against Defendants for trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement.  On September 25, 2020, Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [5]. On September 25, 2020, this Court entered a Temporary Restraining Order, enjoining Defendants from, among other actions, continuing to manufacture, promote, and/or sell any products bearing Plaintiffs' alleged infringed trademarks. The Temporary Restraining Order also directed PayPal, Inc. ("PayPal") to identify and restrain funds in payment accounts associated with the Defendants and to divert those funds to a holding account. Pursuant to the Court's September 25, 2020 Order, Plaintiffs served Defendants with a copy of the Complaint together with copies of the Motion and the Court's September 25, 2020 Temporary Restraining Order, thereby providing notice and copies of the September 25, 2020 Temporary Restraining Order and Plaintiffs' Motion via e-mail to each Defendant's corresponding e-mail address and by posting copies of the Temporary Restraining Order and all other pleadings and documents on file in this action on the website located at

http://servingnotice.com/Rw34PV/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant, ECF Nos. [13], [14], and [15].

## II.   LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

## III.   ANALYSIS

The declarations Plaintiffs submitted in support of their Motion for Preliminary Injunction support the following conclusions of law:

A.   Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiffs' products that bear copies of Plaintiffs' Marks;

B.   Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted.  The following specific facts, as set forth in Plaintiffs' Complaint, Motion for Preliminary Injunction, and accompanying declarations on file, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers because it is more likely true than not that:

1.      Defendants own or control Internet websites, domain names, or businesses which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiffs' rights; and

2.      There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products.

C.      The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations and goodwill if such relief is not issued.

D.      The public interest favors issuance of the preliminary injunction to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiffs' genuine goods.

E.      Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks.  *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of

permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Fed. Trade Comm'n v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.    In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.    <u>CONCLUSION</u>

Accordingly, after due consideration, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [5]**, is **GRANTED** as follows:

(1)    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are enjoined and restrained, until further Order of this Court:

    a.    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiffs; and

    b.    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks.

(2)    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Marks or any confusingly similar trademarks, on or in connection with all Internet websites or

domain names, aliases or businesses owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet websites registered, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

(4) Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this action, or until further order of the Court;

(5) Upon Plaintiffs' request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information are ordered, to the extent not already done, to disclose to Plaintiffs the true identities and contact information of those registrants;

(6) The domain name registrars for the Subject Domain Names shall immediately, to the extent not already done, assist in changing the registrar of record for the Subject Domain Names, to a holding account with a registrar of Plaintiffs' choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. To the extent the registrars do not assist in

changing the registrars of record for the domains under their respective control within **one (1)**
**business day** of receipt of this Order, the top-level domain (TLD) registries for the Subject Domain
Names, or their administrators, including backend registry operators or administrators, within **five**
**(5) business days** of receipt of this Order, shall change, or assist in changing, the registrar of record
for the Subject Domain Names to a holding account with the New Registrar, excepting any such
domain names which such registries have been notified in writing by Plaintiffs have been or will
be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately
transfer such domain names. Upon the change of the registrar of record for the Subject Domain
Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court
during the pendency of this action. Additionally, the New Registrar shall immediately institute a
temporary 302 domain name redirection which will automatically redirect any visitor to the
Subject Domain Names to the following Uniform Resource Locator ("URL")
http://servingnotice.com/Rw34PV/index.html whereon copies of the Complaint, this Order, and
all other documents on file in this action are displayed. Alternatively, the New Registrar may
update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which
link the domain names to the IP addresses where their associated websites are hosted, to
NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names
to resolve to the website where copies of the Complaint, this Order, and all other documents on
file in this action are displayed. After the New Registrar has effected this change, the Subject
Domain Names shall be placed on lock status by the New Registrar, preventing the modification
or deletion of the domains by the New Registrar or Defendants;

(7)     Each Defendant shall continue to preserve copies of all computer files relating to
the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer

files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

(8)    Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify and restrain all funds in all financial accounts and/or sub-accounts associated with the Internet websites operating under the Subject Domain Names and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

(9)    Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, PayPal, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace

website, including but not limited to, PayPal, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

(10)    Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(11)    This Order shall apply to the Subject Domain Names, associated websites, and any other domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting Plaintiffs' Marks at issue in this action and/or unfairly competing with the Plaintiffs;

(12)    As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action, or as to which Plaintiffs have withdrawn their request for a preliminary injunction;

(13)    Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain their previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(14)    This Order shall remain in effect during the pendency of this action, or until further Order of this Court.

Case No. 20-cv-61941-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 2, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record *via* E-mail

Case No. 20-cv-61941-BLOOM/Valle

### SCHEDULE "A"
### DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME,
### AND ASSOCIATE E-MAIL ADDRESSES

| Defendant Number | Defendant / Domain Name | E-mail Address |
|---|---|---|
| 1 | montblanchot.com | watchesoem@aliyun.com |
| 1 | bluereplicawatches.com | watchesoem@aliyun.com |
| 1 | hotreplicawatches.co | watchesoem@aliyun.com |
| 1 | luxuryreplicawatches.net | watchesoem@aliyun.com |
| 1 | perfectreplicawatches.com | watchesoem@aliyun.com |
| 1 | replicawatches.live | watchesoem@aliyun.com |
| 1 | replicawatchescub.com | watchesoem@aliyun.com |
| 2 | aaabagtrade.ru | aaabagstrade@hotmail.com |
| 3 | aaawatch.cc | aaa-watch@outlook.com |
| 4 | aaawatchs.com | watchesc@outlook.com |
| 5 | abestwatch.com | eileen.fang@aol.com<br>bestwatcheseller@gmail.com |
| 5 | bestwatchus.com | |
| 5 | cheapscaps.com | |
| 5 | copywatchus.com | |
| 5 | ireplicawatchesuk.com | |
| 5 | zbestwatch.com | eileen.fang@aol.com |
| 6 | akrmall.com | fakembpen@gmail.com |
| 7 | alifetherabbit.com | rachel@inexpensiveluxury.cn<br>QIUJIEXING78@163.COM |
| 8 | anbrindes.com | fairie@followfashion.cn |
| 9 | before-thefall.com | aison@seekfashions.cn<br>JIHE295892692@YEAH.NET |
| 10 | bestclock.cn | bestwatchonsale@gmail.com<br>linliangemail@qq.com |
| 11 | brandstatt-galerie.de | |
| 12 | buywatches.to | watchesvivi@gmail.com |
| 12 | swissreplica.to | watchesvivi@gmail.com |
| 13 | cartier-ring.us | CRISTINA.VENNERA@HOTMAIL.COM |
| 14 | cartier-tw.com | yanuotw@yahoo.com.tw<br>yanuotw@hotmail.com |
| 14 | montblanctw.com | yanuotw@yahoo.com.tw |

Case No. 20-cv-61941-BLOOM/Valle

| 15 | cartiers.us | arthur@globalsolvestore.com<br>KELI.CAMACHO@HOTMAIL.COM |
|----|-------------|-------------------------------------------------------------|
| 16 | chazingtime05.co | |
| 16 | chazingtime06.co | |
| 17 | chloedeutschland.de | Serviceonline.Annie@Gmail.Com |
| 17 | chloemelbourne.com | Serviceonline.Annie@Gmail.Com |
| 17 | chloeoutletuk.com | Serviceonline.Annie@Gmail.Com |
| 17 | chloesaleuk.com | Serviceonline.Annie@Gmail.Com |
| 17 | chloesoldes.fr | Serviceonline.Annie@Gmail.Com<br>XIEZHONGJI7524@163.COM |
| 17 | chloeuk.com | Serviceonline.Annie@Gmail.Com |
| 18 | choosepopwatches.co | choosepopwatchco@gmail.com |
| 19 | cwbtime.com.br | atendimento@cwbtime.com.br |
| 20 | dubaiwatchstore.com | info@dubaiwatchstore.com |
| 21 | fakeswatchesstore.com | lisapeel95@gmail.com |
| 22 | faketopwatches.com | watchesoem2@outlook.com |
| 22 | iwcwatches.org | watchesoem2@outlook.com |
| 22 | replicaiwcwatches.com | watchesoem2@outlook.com |
| 23 | fakewatchesshopping.com | millerlisa105@gmail.com |
| 24 | firstcopywatchesindiaonline.com | ITNATIONHELP@GMAIL.COM |
| 25 | fixreplicawatches.com | |
| 25 | unitedluxuryshop.net | hello@unitedluxuryshop.com<br>info@unitedluxuryshop.com |
| 26 | frmontre.com | |
| 27 | hontwatches.to | contact@hontwatch.me |
| 28 | ifdogsrantheworld.com | email@customerservicebest.com |
| 29 | kelolanews.com | Customerservice@after-saleservice.com |
| 30 | ladybelle.co | Info@voguesky.co |
| 31 | montblanc149.com | outletmystore@outlook.com<br>outletmystore@gmail.com |
| 32 | montblancindia.org | CARE@MONTBLANCINDIA.CO |
| 33 | nenecollection.com | jimmy@newpromotion.cn |
| 34 | nicecopywatchs.com | watchesa@outlook.com |
| 35 | nit.md | topluxurysale@Yahoo.com<br>replicawatchessale@yahoo.com |
| 35 | tally.tl | topluxurysale@yahoo.com<br>replicawatchessale@yahoo.com |

Case No. 20-cv-61941-BLOOM/Valle

| 36 | noob2016.com | noob2016@vip.163.com |
|---|---|---|
| 37 | occasionmontres.com | |
| 38 | ok-replicak.com | okreplicasale@gmail.com<br>hellook_sally@hotmail.com<br>ANSONRX@GMAIL.COM |
| 38 | topclonewatch.me | hellorolex@gmail.com<br>hellook_sally@hotmail.com |
| 38 | topfakewatch.com | |
| 38 | vawatches.com | OKREPLICASALE@GMAIL.COM |
| 39 | on-linewatches.com | WATCHBRANDS@HOTMAIL.COM<br>brandwatchess@hotmail.com |
| 40 | orologirepliche.it | vipwatches@yahoo.com |
| 40 | replicaorologinegozio.com | vipwatches@yahoo.com |
| 40 | supercopywatches.com | |
| 40 | watches-vip.cc | vipwatches@yahoo.com |
| 41 | osreplicawatches.com | michelle@designerseller.com<br>michellecoo1996@protonmail.com<br>michellecoo1996@outlook.com |
| 42 | perfectreplica.to | perfectreplicaio@gmail.com |
| 43 | pursevalleyfactory.la | |
| 44 | realso.co | |
| 45 | relojesok.com | servicetony@hotmail.com |
| 46 | replicamontblanc.cn | 980422350@qq.com |
| 47 | replicasderelogios.eco.br | dantebrezinski@gmail.com |
| 48 | replicaswatchesonline.co.uk | |
| 49 | replicheitorologi.com | |
| 50 | shopchoebagsjp.com | helpdesk@clientservicehome.com |
| 51 | swisscartier.uk | saleswatchesshop@gmail.com |
| 52 | swisschrono.shop | sales@swisschrono.shop |
| 53 | tatler-moda.ru | info@tatler-moda.ru |
| 54 | thebandschmeeze.com | fabian@followfashion.cn |
| 55 | topreplicajewelry.com | |
| 56 | tswatches.cz | sales.tswatches@gmail.com |
| 57 | uhublotsale.me | |
| 58 | ukluxuryshop.com | hello@unitedluxuryshop.com |
| 59 | usatiorologi.com | |
| 60 | vnwatches.co.uk | alex@yuefg.com |
| 61 | watchesbuyoff.to | watchesbuyoffvip@gmail.com |

Case No. 20-cv-61941-BLOOM/Valle

| 62 | watchesfiles.com | watches.trade@outlook.com |
|----|------------------|---------------------------|
| 63 | watchesyoga.co | watchesyoga@gmail.com |
| 64 | watchsold.vip | watch.sale@hotmail.com |
| 65 | wmwatches.co | wmwatchescnservice@gmail.com |