# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-61941-BLOOM/Valle

RICHEMONT INTERNATIONAL SA,
CARTIER INTERNATIONAL A.G.,
CHLOE S.A.S., MONTBLANC-SIMPLO
GMBH, and OFFICINE PANERAI A.G.,

      Plaintiffs,

v.

MONTBLANCHOT.COM, et al.,

      Defendants.

_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs' Richemont International SA, Cartier International A.G., Chloe S.A.S., Montblanc-Simplo GMBH, and Officine Panerai A.G. (collectively, "Plaintiffs"), Motion for Entry of Final Default Judgment Against Defendants, ECF No. [29] ("Motion"), filed on November 12, 2020. A Clerk's Default was entered against Defendants on October 22, 2020, ECF No. [27], as Defendants failed to appear, answer, or otherwise plead to the Complaint, ECF No. [1], despite having been served. *See* ECF No. [16]. The Court has carefully considered the Motion, the record in this case, and the applicable law, and is otherwise fully advised. For the following reasons, Plaintiffs' Motion is **GRANTED**.

### I.  Introduction

Plaintiffs sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); cybersquatting under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(d); common-law unfair competition; and common-law trademark infringement. The Complaint

alleges that Defendants are promoting, advertising, distributing, offering for sale and selling goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiffs' respective registered trademarks within the Southern District of Florida through the fully interactive commercial Internet websites and supporting domain names operating under their domain names identified on Schedule "A" attached to Plaintiffs' Motion for Entry of Final Default Judgment (collectively, the "Subject Domain Names"). *See* ECF No. [29] at 18-21.

Plaintiffs further assert that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiffs because Defendants have (1) deprived Plaintiffs of their respective rights to determine the manner in which their respective trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiffs; (3) deceived the public as to Plaintiffs' association with Defendants' goods and the websites that market and sell the goods; and (4) wrongfully traded and capitalized on Plaintiffs' respective reputations and goodwill, as well as the commercial value of Plaintiffs' respective trademarks.

In their Motion, Plaintiffs seek the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, cybersquatting, common-law unfair competition, and common-law trademark infringement. Plaintiffs further request that the Court (1) enjoin Defendants from producing or selling goods that infringe their respective trademarks; (2) disable, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs; (3) assign all rights, title, and interest, to the domain names to Plaintiff and permanently delist or deindex the domain names from any Internet search engines; (5) suspend the e-mail addresses used by Defendants; and (6) award statutory damages.

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" of Plaintiffs' Motion, and Schedule "A" of this Order. *See* ECF No. [29] at 18-21.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default . . ."). Upon a review of Plaintiffs' submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiffs.

## II.   Factual Background[2]

Plaintiff Richemont International SA is the owner of the entire right, title and interest in and to the IWC Schaffhausen trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "IWC Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| IWC | 1,205,403 | August 17, 1982 | IC 014 - Watches |
| PORTOFINO | 1,846,680 | July 26, 1994 | IC 014 - Watches and parts therefore |

---

[2] The factual background is taken from Plaintiffs' Complaint, ECF No. [1], Plaintiffs' Motion for Entry of Final Default Judgment Against Defendants, ECF No. [29], and supporting evidentiary submissions.

Case No. 20-cv-61941-BLOOM/Valle

| | | | |
|---|---|---|---|
| **IWC** SCHAFFHAUSEN | 4,270,382 | January 8, 2013 | IC 014 - Watches, chronometers, clocks; straps for wristwatches, boxes of precious metal for watches and all the aforementioned goods from Switzerland |
| IWC | 4,322,600 | April 23, 2013 | IC 014 - Watches, chronometers, clocks, watch bands, boxes of precious metal for watches |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 7; ECF No. [1-2] (containing Certificates of Registrations for the IWC Marks at issue). The IWC Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 6-7.

Plaintiff Richemont International SA is the owner of the entire right, title and interest in and to the Vacheron Constantin trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "VACHERON CONSTANTIN Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| VACHERON CONSTANTIN | 3,114,414 | July 11, 2006 | IC 014 - Cuff links; watches, chronometers, clocks, watchstraps, cases of precious metal for watches and jewellery |
| | 4,564,316 | July 8, 2014 | IC 014 - Watches and chronometers |
| VACHERON CONSTANTIN | 5,630,166 | December 18, 2018 | IC 014 - Jewelry; Cuff links; Tie clips; Jewelry in the nature of rings, bracelets, earrings, necklaces and brooches; Timepieces in the nature of clocks; Dials for clock and watch making; Key |

| | | | |
|---|---|---|---|
| | | | rings of precious metal; Timepieces and chronometric instruments; Watches; Chronometers; Cases adapted for holding watches; Movements for timepieces in the nature of clocks and watches; Alarm clocks; Watch bands; Boxes of precious metal |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 13; ECF No. [1-3] (containing Certificates of Registrations for the VACHERON CONSTANTIN Marks at issue). The VACHERON CONSTANTIN Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 12-13.

Plaintiff Cartier International A.G. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "CARTIER Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CARTIER | 0,411,239 | January 9, 1945 | IC 008, 014 - Precious-Metal Ware-Namely, The Following Articles Made, In Whole Or In Part, Of Precious Metals Or Plated With The Same; Jewel Boxes, Fobs, Bracelets, Watch Bracelets And Buckles Therefore, Not Including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings. |

| | | | |
|---|---|---|---|
| *Cartier* | 0,411,240 | January 9, 1945 | IC 014 - Articles of Jewelry for Personal Wear and for Precious-Metal Ware-Namely, the Following Articles Made, in Whole or in Part, of Precious Metals or Plated with the Same--viz, Jewel Boxes, Fobs, Bracelets, Watch Bracelets and Buckles Therefor, Not Including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings |
| *Cartier* | 0,411,975 | February 13, 1945 | IC 014 - Watches and Clocks and Wrist Watches with Wrist Straps and Bracelets Attached for Securing the Same on the Wrist of the Wearer, and Traveling Clocks and Watches with Covers of Leather, Fabric and the Like for Protecting Them While Traveling |
| CARTIER | 0,759,201 | October 29, 1963 | IC 014 - Watches and Clocks |
| LOVE BRACELET | 1,005,286 | February 25, 1975 | IC 014 - Jewelry-Namely, Bracelets |
|  | 1,372,423 | November 26, 1985 | IC 014 – Bracelets |
|  | 3,162,410 | October 24, 2006 | IC 014 - Jewelry, Namely, Bracelets, Watches, Rings, Charms, Earrings |

| | | | |
|---|---|---|---|
|  | 3,282,847 | August 21, 2007 | IC 014 - Horologic and chronometric instruments, namely, watches |
| BALLON BLEU | 3,476,888 | July 29, 2008 | IC 014 - Watches, Chronometers, Clocks |
|  | 3,776,794 | April 20, 2010 | IC 014 - Jewelry, Namely, Rings, Bracelets, Charms, Earrings, Made Of Precious Metals |
| Cartier | 4,178,047 | July 24, 2012 | IC 014 - Jewelry and watches |
|  | 4,281,248 | January 29, 2013 | IC 014 - Jewelry; Necklaces. |
| JUSTE UN CLOU | 4,290,694 | February 19, 2013 | IC 014 - Jewelry; cuff links; tie clips; rings; earrings; necklaces; brooches. |
|  | 4,483,522 | February 18, 2014 | IC 014 – Watches |
|  | 4,487,142 | November 27, 2012 | IC 014 – Watches |

| | | | |
|---|---|---|---|
|  | 4,608,158 | September 23, 2014 | IC 014 – Watches |
|  | 5,583,979 | October 16, 2018 | IC 014 – Jewelry |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 19; ECF No. [1-4] (containing Certificates of Registrations for the CARTIER Marks at issue). The CARTIER Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 18-19.

Plaintiff Chloe S.A.S. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "CHLOE Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| Chloé | 0,950,843 | January 16, 1973 | IC 010, 025, 026 - Ladies' articles of clothing for outerwear-namely, frocks, dresses, coats, costumes, suits, skirts, blouses, vests and pant-suits; vests, and ladies' shoes |
| CHLOE | 1,491,810 | June 14, 1988 | IC 018 - Handbags, Purses |
| SEE BY CHLOE | 2,641,982 | October 29, 2002 | IC 018 - travelling bags, holdalls, tote bags, handbags, credit card case; purses, wallets, key cases, coin purses, parts and fittings for all the aforesaid goods<br><br>IC 025 - clothing, namely, trousers, skirts, suits, dresses, jackets, blousons, shirts, coats, cardigans, sweaters, blouses, shorts, t-shirts, pullovers, scarves |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 25; ECF No. [1-5] (containing the Certificates of Registration for the CHLOE Marks at issue). The CHLOE Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 24-25.

 Plaintiff Montblanc-Simplo GMBH is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "MONTBLANC Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
| --- | --- | --- | --- |
| MONTBLANC | 0,776,208 | September 1, 1964 | IC 016 - Fountain Pens, Cases for Fountain Pens, Ball Point Pens, Ball Point Cartridges, Ball Point Paste, Mechanical Pencils, Lead for Mechanical Pencils |
|  | 0,839,016 | November 21, 1967 | IC 002 - Fountain pen ink<br><br>IC 016 - Fountain pens, cases for fountain pens, ball point pens, ball point cartridges, mechanical pencils, lead for mechanical pencils, desk stands for pens |
| MEISTERSTUCK | 1,324,392 | March 12, 1985 | IC 016 - Fountain Pens, Ballpoint Pens and Mechanical Pencils Including Sets Thereof, All Made Partially with Precious Metals and Sold in Specialty Stores |
| MONTBLANC | 1,884,842 | March 21, 1995 | IC 014 - Jewelry, watches and timepieces<br><br>IC 018 - Purses, handbags, small leather articles and accessories, namely wallets and billfolds, and luggage |
| STARWALKER | 2,759,073 | September 2, 2003 | IC 016 - Fountain pens, ball-point pens, pencils, felt-tip pens, rollerballs |
| TIMEWALKER | 2,775,693 | October 21, 2003 | IC 014 - Wrist watches. |

| | | | |
|---|---|---|---|
|  | 2,975,592 | July 26, 2005 | IC 016 - Writing instruments |
|  | 3,659,753 | July 28, 2009 | IC 016 - Writing instruments, namely, pens |
|  | 4,460,482 | January 07, 2014 | IC 016 - Writing instruments, in particular fountain pens, rollerballs, ballpoint pens, markers, pencils |
|  | 4,669,133 | January 13, 2015 | IC 014 - Jewelry; precious stones; precious metals and their alloys; cufflinks; tie clips; rings; bracelets; earrings; necklaces; brooches; key rings of precious metal; jewelry cases; boxes of precious metals; horological and chronometric instruments; watches; chronometers; clocks; small clocks; watch cases; watch bands; watch bracelets; key rings, trinkets, or fobs of precious metal IC 016 - Stationery; articles of paper or cardboard, namely, boxes, bags, envelopes and pouches for packaging; wrapping paper; writing instruments; pouches for writing instruments; cases for writing instruments; inks and ink refills for writing instruments; desk sets; writing books; calendars, note books, card and document files, announcement cards; writing paper, envelopes, index cards; business cards; writing pads; writing instrument holders; paperweights; diaries, cover for diaries, replacement papers for diaries; inkwells; check book holders, passport holders; |

Case No. 20-cv-61941-BLOOM/Valle

| | | | document holders and cases; photo albums; bookends; money clips; writing cases for writing instruments |
|---|---|---|---|

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 31; ECF No. [1-6] (containing Certificates of Registrations for the MONTBLANC Marks at issue). The MONTBLANC Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 30-31.

Plaintiff Officine Panerai A.G. is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "PANERAI Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| PANERAI | 2,340,290 | April 11, 2000 | IC 014 - Chronometers, watches |
| RADIOMIR | 2,418,830 | January 9, 2001 | IC 014 - Chronometers; watches and clocks. |
| LUMINOR | 2,516,018 | December 11, 2001 | IC 014 - Chronometers, watches and clocks |
|  | 3,004,529 | October 4, 2005 | IC 014 - Boxes and cases for watches; chronometers, watches |
| OFFICINE PANERAI | 4,009,035 | August 9, 2011 | IC 014 - Watches and clocks; watch accessories, namely, watch straps, and buckles for watch bands and watch straps. |
|  | 4,971,867 | June 7, 2016 | IC 014 - Watches |

| | | | IC 014 - Chronometers, watches |
|---|---|---|---|
| LUMINOR MARINA | 5,763,549 | May 28, 2019 | |

*See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 37; ECF No. [1-7] (containing Certificates of Registrations for the PANERAI Marks at issue). The PANERAI Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 36-37.

Defendants, through the various fully interactive, commercial Internet websites and supporting domains operating under the Subject Domain Names have advertised, promoted, offered for sale, or sold goods bearing what Plaintiffs have determined to be counterfeits, infringements, reproductions, or colorable imitations of the IWC Marks, VACHERON CONSTANTIN Marks, CARTIER Marks, CHLOE Marks, MONTBLANC Marks, and/or PANERAI Marks (collectively, "Plaintiffs' Marks"). *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 42-44; *see also* Declaration of Stephen M. Gaffigan, ECF No. [5-2] at 2.

Although each Defendant may not copy and infringe each of the Plaintiffs' individual trademarks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the trademarks at issue. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 42-44. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Plaintiffs' Marks. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 42-43.

Further, the Plaintiffs have reason to believe the Defendants use money transfer and retention services with financial institutions such as PayPal, Inc. ("PayPal"), and/or accept payment methods including, but not limited to, Western Union, Mastercard, and Visa, to receive

monies generated through the sale of counterfeit and infringing products, as the Plaintiffs' counsel's firm found these payment methods indicated on the websites when accessing the Subject Domain Names. *See* Declaration of Stephen M. Gaffigan, ECF No. [5-2] at 2.

Under Plaintiffs' representative's direct supervision, Incopro Limited's reviewing representatives reviewed and visually inspected each Defendants' websites, as well as the images of various items bearing and/or using the Plaintiffs' Marks offered for sale by Defendants through the Internet websites operating under the Subject Domain Names, and determined the products offered for sale were non-genuine, unauthorized versions of Plaintiffs' respective products. *See* Declaration of Emma-Jane Tritton, ECF No. [5-1] at 4, 43-44.

### III.    ANALYSIS

#### A. Claims

##### 1.    *Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I)*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate that (1) they had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiffs' trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2. *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

### 3. *Cybersquatting Under 15 U.S.C. § 1125(d) (Count III)*

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

### 4. *Common-Law Unfair Competition and Trademark Infringement (Counts IV and V)*

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis

of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983.)".); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### B. Liability

The well-pled factual allegations of Plaintiffs' Complaint properly allege the elements for each of the claims described above. *See* ECF No. [1]. Moreover, the factual allegations in Plaintiffs' Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F.

Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiffs' Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [1]. Further, the Complaint alleges, and the submissions by Plaintiffs show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiffs' genuine products and that consumers viewing Defendants'

counterfeit goods post-sale would actually confuse them for Plaintiffs' genuine products. *See id*. "The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiffs." *See* ECF No. [1] at 60.

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names because Plaintiffs cannot control the quality of what appears to be their products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiffs' respective reputations and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiffs face hardship from loss of sales and their inability to control their respective reputations in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks, which is an illegal act.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co*., 321 U.S.

707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name. *See* 15 U.S.C. § 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiffs' respective rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by  transferring the Subject Domain Names and assigning all rights, title, and interest to the Subject Domain Names to Plaintiffs, delisting or deindexing the Subject Domain Names from all search engines, and suspending Defendants' e-mail addresses, which are identified on Schedule "B" to Plaintiffs' Motion, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods. *See* ECF No. [29] at 22-23.

### D.  Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of

statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs have elected to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 U.S. Dist. LEXIS 56475, at *22-23 (S.D. Fla. Apr. 23, 2014) (*citing Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.,* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l,*

*Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages.  *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record." (citations omitted)); *see also PetMed Express*, *Inc*., 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally copied the Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' respective world-famous reputations. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing one (1) mark which were in fact counterfeits of at least one of the Plaintiffs' Marks. *See* ECF No. [1]. Based on the above considerations, Plaintiffs suggest the Court award statutory damages of $1,000,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' respective trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E.  Damages for False Designation of Origin

Plaintiffs' Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### F.  Statutory Damages for Cybersquatting

Plaintiffs' Complaint also sets forth a cause of action for cybersquatting pursuant to the ACPA, 15 U.S.C. §1125(d). As admitted by default, and established by the evidence submitted, Defendant Numbers 1, 13, 14, 15, 17, 22, 31, 32, 46, and 51 have acted with the bad-faith intent to profit from at least one of the Plaintiffs' Marks and the goodwill associated with the Plaintiffs' Marks by registering their respective Subject Domain Names identified on Schedule "C" attached to Plaintiffs' Motion (collectively, the "Cybersquatted Subject Domain Names"). *See* ECF No. [29] at 24. Each of the Cybersquatted Subject Domain Names incorporates one or more of the Plaintiffs' Marks in its entirety, surrounded by descriptive or generic terms, rendering the domain names nearly identical to the Plaintiffs' Marks.

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c); *Victoria's Cyber Secret Ltd. P'ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001). Accordingly, Plaintiffs are entitled to the transfer and ownership of Defendant Numbers 1, 13, 14, 15, 17, 22, 31, 32, 46, and 51's Cybersquatted Subject Domain Names because they are confusingly similar to at least one of the Plaintiffs' Marks.

Additionally, Plaintiffs may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just. 15 U.S.C. § 1117(d). Plaintiffs have elected statutory damages and request, in view of Defendant Numbers 1, 13, 14, 15, 17, 22, 31, 32, 46, and 51's intentional, wrongful behavior, an award in the amount of $100,000.00 for each of the Cybersquatted Subject Domain Names. *See* ECF No. [29] at 24. *See Punch Clock, Inc. v. Smart Software Development*, 553 F. Supp. 2d 1353, 1359 (S.D. Fla. 2008) (awarding $100,000.00 for the domain name at issue based upon, *inter alia*, the willful and blatant nature of the infringement in this case). The Court finds that this amount is reasonable and, therefore, awards such damages.

### G. Damages for Common Law Unfair Competition and Trademark Infringement

Plaintiffs' Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count IV) and trademark infringement (Count V). Judgment on Count IV and Count V are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [29]**, is **GRANTED** against those Defendants listed in the attached Schedule "A." Pursuant to Federal Rule of Civil Procedure 58, the Court will separately enter Default Final Judgment.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 13, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Case No. 20-cv-61941-BLOOM/Valle

Counsel of Record *via* E-mail

### SCHEDULE "A"
### DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME,
### AND ASSOCIATE E-MAIL ADDRESSES

| Defendant Number | Defendant / Domain Name | E-mail Address |
|---|---|---|
| 1 | montblanchot.com | watchesoem@aliyun.com |
| 1 | bluereplicawatches.com | watchesoem@aliyun.com |
| 1 | hotreplicawatches.co | watchesoem@aliyun.com |
| 1 | luxuryreplicawatches.net | watchesoem@aliyun.com |
| 1 | perfectreplicawatches.com | watchesoem@aliyun.com |
| 1 | replicawatches.live | watchesoem@aliyun.com |
| 1 | replicawatchescub.com | watchesoem@aliyun.com |
| 2 | aaabagtrade.ru | aaabagstrade@hotmail.com |
| 3 | aaawatch.cc | aaa-watch@outlook.com |
| 4 | aaawatchs.com | watchesc@outlook.com |
| 5 | abestwatch.com | eileen.fang@aol.com<br>bestwatcheseller@gmail.com |
| 5 | bestwatchus.com | |
| 5 | cheapscaps.com | |
| 5 | copywatchus.com | |
| 5 | ireplicawatchesuk.com | |
| 5 | zbestwatch.com | eileen.fang@aol.com |
| 6 | akrmall.com | fakembpen@gmail.com |
| 7 | alifetherabbit.com | rachel@inexpensiveluxury.cn<br>QIUJIEXING78@163.COM |
| 8 | anbrindes.com | fairie@followfashion.cn |
| 9 | before-thefall.com | aison@seekfashions.cn<br>JIHE295892692@YEAH.NET |
| 10 | bestclock.cn | bestwatchonsale@gmail.com<br>linliangemail@qq.com |
| 11 | brandstatt-galerie.de | |
| 12 | buywatches.to | watchesvivi@gmail.com |
| 12 | swissreplica.to | watchesvivi@gmail.com |
| 13 | cartier-ring.us | CRISTINA.VENNERA@HOTMAIL.COM |
| 14 | cartier-tw.com | yanuotw@yahoo.com.tw<br>yanuotw@hotmail.com |
| 14 | montblanctw.com | yanuotw@yahoo.com.tw |

| 15 | cartiers.us | arthur@globalsolvestore.com<br>KELI.CAMACHO@HOTMAIL.COM |
|---|---|---|
| 16 | chazingtime05.co | |
| 16 | chazingtime06.co | |
| 17 | chloedeutschland.de | Serviceonline.Annie@Gmail.Com |
| 17 | chloemelbourne.com | Serviceonline.Annie@Gmail.Com |
| 17 | chloeoutletuk.com | Serviceonline.Annie@Gmail.Com |
| 17 | chloesaleuk.com | Serviceonline.Annie@Gmail.Com |
| 17 | chloesoldes.fr | Serviceonline.Annie@Gmail.Com<br>XIEZHONGJI7524@163.COM |
| 17 | chloeuk.com | Serviceonline.Annie@Gmail.Com |
| 18 | choosepopwatches.co | choosepopwatchco@gmail.com |
| 19 | cwbtime.com.br | atendimento@cwbtime.com.br |
| 20 | dubaiwatchstore.com | info@dubaiwatchstore.com |
| 21 | fakeswatchesstore.com | lisapeel95@gmail.com |
| 22 | faketopwatches.com | watchesoem2@outlook.com |
| 22 | iwcwatches.org | watchesoem2@outlook.com |
| 22 | replicaiwcwatches.com | watchesoem2@outlook.com |
| 23 | fakewatchesshopping.com | millerlisa105@gmail.com |
| 24 | firstcopywatchesindiaonline.com | ITNATIONHELP@GMAIL.COM |
| 25 | fixreplicawatches.com | |
| 25 | unitedluxuryshop.net | hello@unitedluxuryshop.com<br>info@unitedluxuryshop.com |
| 26 | frmontre.com | |
| 27 | hontwatches.to | contact@hontwatch.me |
| 28 | ifdogsrantheworld.com | email@customerservicebest.com |
| 29 | kelolanews.com | Customerservice@after-saleservice.com |
| 30 | ladybelle.co | Info@voguesky.co |
| 31 | montblanc149.com | outletmystore@outlook.com<br>outletmystore@gmail.com |
| 32 | montblancindia.org | CARE@MONTBLANCINDIA.CO |
| 33 | nenecollection.com | jimmy@newpromotion.cn |
| 34 | nicecopywatchs.com | watchesa@outlook.com |
| 35 | nit.md | topluxurysale@Yahoo.com<br>replicawatchessale@yahoo.com |
| 35 | tally.tl | topluxurysale@yahoo.com<br>replicawatchessale@yahoo.com |
| 36 | noob2016.com | noob2016@vip.163.com |

| 37 | occasionmontres.com | |
|---|---|---|
| 38 | ok-replicak.com | okreplicasale@gmail.com<br>hellook_sally@hotmail.com<br>ANSONRX@GMAIL.COM |
| 38 | topclonewatch.me | hellorolex@gmail.com<br>hellook_sally@hotmail.com |
| 38 | topfakewatch.com | |
| 38 | vawatches.com | OKREPLICASALE@GMAIL.COM |
| 39 | on-linewatches.com | WATCHBRANDS@HOTMAIL.COM<br>brandwatchess@hotmail.com |
| 40 | orologirepliche.it | vipwatches@yahoo.com |
| 40 | replicaorologinegozio.com | vipwatches@yahoo.com |
| 40 | supercopywatches.com | |
| 40 | watches-vip.cc | vipwatches@yahoo.com |
| 41 | osreplicawatches.com | michelle@designerseller.com<br>michellecoo1996@protonmail.com<br>michellecoo1996@outlook.com |
| 42 | perfectreplica.to | perfectreplicaio@gmail.com |
| 43 | pursevalleyfactory.la | |
| 44 | realso.co | |
| 45 | relojesok.com | servicetony@hotmail.com |
| 46 | replicamontblanc.cn | 980422350@qq.com |
| 47 | replicasderelogios.eco.br | dantebrezinski@gmail.com |
| 48 | replicaswatchesonline.co.uk | |
| 49 | replicheitorologi.com | |
| 50 | shopchoebagsjp.com | helpdesk@clientservicehome.com |
| 51 | swisscartier.uk | saleswatchesshop@gmail.com |
| 52 | swisschrono.shop | sales@swisschrono.shop |
| 53 | tatler-moda.ru | info@tatler-moda.ru |
| 54 | thebandschmeeze.com | fabian@followfashion.cn |
| 55 | topreplicajewelry.com | |
| 56 | tswatches.cz | sales.tswatches@gmail.com |
| 57 | uhublotsale.me | |
| 58 | ukluxuryshop.com | hello@unitedluxuryshop.com |
| 59 | usatiorologi.com | |
| 60 | vnwatches.co.uk | alex@yuefg.com |
| 61 | watchesbuyoff.to | watchesbuyoffvip@gmail.com |
| 62 | watchesfiles.com | watches.trade@outlook.com |
| 63 | watchesyoga.co | watchesyoga@gmail.com |

| 64 | watchsold.vip | watch.sale@hotmail.com |
| 65 | wmwatches.co | wmwatchescnservice@gmail.com |